STANDARD, INC. *v.* STANDARD COIN-OP DISTRIBUTORS

5-3335                                      382 S. W. 2d 888

Opinion Delivered October 19, 1964.

*Thorp Thomas & Roy Finch, Jr.,* for appellant.

*Moses, McClellan, Arnold, Owen & McDermott,* for appellee.

CARLETON HARRIS, Chief Justice. Carroll Johnson, Jr., of Gallatin, Tennessee, president of Standard Coin-Op Distributors, Inc., a Tennessee corporation with its home office in Memphis, and engaged in the coin laundry and dry-cleaning business, sent two dry-cleaning machines to Standard, Inc., of Little Rock, for reconditioning. (One was sent in September, 1961, and the other in November of the same year.) According to the evidence, appellant company accepted the machines, and Teddy Abeles, vice-president of appellant company, agreed that the machines would be overhauled or reconditioned at a charge of between $350.00 and $500.00 each. It developed that one of the machines was subject to a mortgage by a prior owner, and Johnson requested Standard to send that machine back without being reconditioned. After waiting a week for the request to be complied with, Johnson called again, and was advised that it would be sent at once. According to Johnson, numerous similar requests were made for the machine to be returned, and he finally

made a trip to Little Rock to determine why his request had not been honored. Johnson also demanded the return of the second machine, but never received either one. In June, 1963, appellee instituted suit, alleging that appellant company had converted the machines to its own use, and seeking judgment for the value of the machines at the time of the conversion, which was alleged to be $10,620.00. An answer was filed, denying the material allegations of the complaint, and setting out that the machines were not purchased from the appellant company, "and were not covered by warranty. Defendant [appellant] was under no obligation to repair the machines of the plaintiff [appellee], and merely acted as a bailee thereof for the sole benefit of the plaintiff." Nearly three months later, appellant amended its answer to allege that it had offered to return to appellee the machines sued for, but, because of appellee's refusal to identify its machines, had been unable to return them. On trial, the Circuit Court, sitting as a jury, found that the two dry-cleaning machines had been sent to appellant company for repair, and had been accepted by appellant for that purpose; that appellant was under an obligation to hold appellee's property separate from the other machines, and thereby be in a position to deliver the machines to appellee; that appellant company did not keep the machines separate from other machines, but dismantled and co-mingled the parts together, and was therefore unable to redeliver the machines to appellee; even though demand was properly made. The court found that the fair market value of each machine, at the time the demand was made for the return of the property, was $3,500.00. Judgment was accordingly awarded appellee in the amount of $7,000.00. From such judgment comes this appeal.

For reversal, appellant asserts first that there was no proper demand, or refusal, to return the machines involved prior to the institution of this action, and, second, that the damages are not only excessive but there is nothing in the evidence upon which the court could have found the damages to be $7,000.00.

Pertinent testimony was as follows:

Johnson, in addition to his testimony that demand had been made for the return of the machines several times, also testified that he made a trip to Little Rock, and talked with Jim Spaulding, sales manager of Standard at that time.[1] He stated that Spaulding told him that the machines had been dismantled and the parts sold. He also testified that he had been offered two machines the Saturday before the trial,[2] but they were not the ones he had sent to appellant. Spaulding testified that the Standard Coin-Op machines had a value of from $4,500.00 to $4,800.00 each.

C. B. Pugh, president of Standard, Inc., testified that his company was not in the business of remodeling or reconditioning machines; rather, that it only manufactured them. However, he did not deny that the machines were in the possession of appellant, but stated that any agreement made had been entered into by Teddy Abeles, vice president of Standard. The witness said that Abeles had left the day before the commencement of the trial to go to Canada, because of previous commitments. He further testified that the Johnson machines were outdated in 1962, and did not have a value of more than $500.00 to $1,000.00 each. Pugh testified that about twenty-two machines, all alike, were disassembled at the same time, and this number included the two machines sought by Johnson. He said that no parts had been sold, and though he had requested Johnson on several occasions to furnish the serial numbers of the machines, in order that appellant would know which particular machines belonged to appellee company, this information had not been furnished. He stated that Johnson could ''pick them up'' after identification.

C. A. Carter, sales engineer for Standard at the time of the trial, testified that he did not know whether the machines (here in litigation) were saleable in Septem-

---

[1] Spaulding is no longer with appellant company, having resigned in June, 1963.

[2] This was apparently two days before the trial, the case having been tried on September 23, 1963, a Monday, and the testimony reflecting that the offer was made "last Saturday."

ber, 1962, but he stated that they were not saleable in January, 1963 (because of their being old models).

It is earnestly contended by appellant that there was no absolute refusal to return the property to appellee, and Pugh said that his company would have returned the machines if Johnson had furnished the serial numbers. Johnson admittedly did not furnish the serial numbers.

"* * * I knew my machines weren't down there. He wouldn't show them to me. He could take the serial number and put it on another machine and ship it back as the right one. * * * The serial number is only on a little plate, stamped on and you can move the plate from machine to machine."

It is insisted by appellant that the failure to return the machines (because of not knowing the serial numbers) amounted to only a qualified refusal, and Johnson's not providing these numbers constituted a valid legal reason for not complying with appellee's demand. Authority is cited to the effect that mere negligence of a bailee does not amount to a conversion.

We are of the view that the facts in the case before us establish much more than mere negligence on the part of appellant company. The proof reflects that the machines were sent to appellant for reconditioning; though Pugh stated that his company did not accept machines for that purpose, there is no denial that these machines were actually received. According to the evidence of both the president of appellee company, and the president of appellant company, the agreement was entered into between Johnson and Abeles. Abeles, as previously pointed out, did not testify, but had left this state the day before the trial. Certainly, if appellant disputed the evidence of Johnson relative to the purpose in sending the machines to appellant company, and it was necessary that Abeles be away from the state, the deposition of this witness could have been taken.

Appellant argues in its brief that, to repair, or recondition, the machines, it was certainly necessary that

they be dismantled. That assertion cannot be disputed,. but we have found no valid reason for intermingling the parts of at least twenty-two machines, and thus making it impossible to determine from which machines the various parts were taken. Mr. Pugh admitted that there was no way to definitely determine which parts came from the Johnson machines, and accordingly no way in which to restore those parts to the machines involved in this litigation. He simply said that the parts installed by his company would be "better parts * * * better than the ones we took off."

We are of the opinion that, irrespective of whether the parts had already been sold, or whether they remained on appellant's premises in bins, there was substantial evidence of a conversion. The furnishing of the serial numbers would not have enabled appellant company to locate the various parts which had been removed. This is not a case wherein the bailee lost property, or where it was accidentally destroyed, or inadvertently misplaced. From a legal standpoint, this case bears some similarity to the Texas case of *Rabe* v. *Jourdan*, 102 S. W. 1167. In that case, Jourdan sued Rabe, the latter having purchased a number of rings and gems (loose stones) from a ten-year-old boy under circumstances that would have put an ordinarily prudent person on notice that the property was stolen. The jewelry belonged to Jourdan, who demanded the return of his property, alleging the jewelry to have a value of $2,309.00. However, Rabe testified he had intermingled the jewelry with his own, and denied refusing to return the property, asserting that he had told Jourdan that if he (Rabe) had any of Jourdan's property, he was ready to deliver it upon proper identification; that he had offered to let Jourdan inspect all property in his possession, and was still willing for this to be done. The jury found for Jourdan in the amount of $1,052.00. In affirming the judgment, the Texas court said:

"* * * We have examined the testimony and ascertain that there was evidence which would warrant a finding that the goods received by defendant were so inter-

mixed with defendant's stock that defendant stated, when asked for them, that he himself was unable to select them. It is true that he says he told plaintiff to pick them out, and he would let him take them; but plaintiff testified he was unable to select them, and told defendant so. There can be no doubt that there was evidence of a demand, of a confusion of the goods consisting largely of loose stones, with property of defendant, and of both plaintiff's and defendant's inability to identify and select them, which practically amounted to a refusal of plaintiff's demand for them, *inasmuch as the result of the confusion of the goods was chargeable to defendant. The demand was sufficiently shown to be refused, if it appeared that defendant had placed himself in a position that rendered compliance inpracticable.*"[3]

Here, neither Pugh nor Johnson could identify the parts, but the officers and employees of appellant company, through their acts, placed appellant "in a position that rendered compliance impracticable."

Accordingly, we find no merit in appellant's first contention, nor can we agree with appellant in its second contention. It is asserted that there was no evidence to support the $7,000.00 judgment. It is true that appellee's testimony was to the effect that the machines were worth $4,500.00 each, but this gives appellant no cause for complaint, since the amount awarded was $2,000.00 less than the value given by appellee's witnesses. Frequently a jury will return a verdict for a figure which is between the values given by witnesses for plaintiff and defendant, respectively, and we have upheld such verdicts. *Ark. State Highway Comm.* v. *Kennedy,* 234 Ark. 89, 350 S. W. 2d 526.

Of course, it is not our prerogative to determine whether judgment should have been rendered in the stated amount. We are only concerned with the question of whether there was substantial evidence to support the court's findings. As heretofore set out, testimony was offered by apparently competent witnesses as to the

---

[3] Emphasis supplied.

value of the machines, and we are unable to say that the testimony so offered did not constitute substantial evidence.

On the whole case, we find no reversible error.

Affirmed.