James JOHNSON *v.*
Martin "Bud" GILLILAND and Larry Huntsberger

94-627                                          896 S.W.2d 856

Supreme Court of Arkansas
Opinion delivered March 20, 1995

*J. G. Molleston*, for appellant.

*Kinard, Grave & Butler, P.A.*, by: *Mike Kinard*, for appellee Martin Gilliland.

*William H. Hodge*, for appellee Larry Huntsberger.

Jack Holt, Jr., Chief Justice. This case requires us to decide whether the trial court erred in failing to apply certain statutes of limitations relating to the bailment or conversion of personal property. On appeal, three points are argued for reversal: (1) the trial court erred in finding that there was substantial evidence to support a finding that the complaint was filed within the time allowed by the statute of limitations; (2) the trial court erred in finding that there was substantial evidence to support the jury verdict finding that the boat and trailer in question were "capable of restoration" to appellee Gilliland; and (3) the trial court erred in failing to order a remittitur. We affirm the trial court as to the first two issues; however, there is merit in Johnson's argument that a remittitur is in order.

In 1981 or 1982, appellee Martin Gilliland put his boat and trailer in a barn owned by Guy Johnson in Stamps, Arkansas, with an understanding that Mr. Johnson would keep it for him while he attended medical school in Grenada. Mr. Gilliland contends that he offered to pay rent several times but that Mr. Johnson refused, saying he was not using the barn for anything else.

In 1984, Mr. Gilliland's son, when using the boat, damaged the engine and left it with another party. Later, Guy Johnson's son, James, the appellant, returned the boat to the barn. In April 1988, James Johnson removed the boat from the barn and took it with him to Wickes, Arkansas, and then, two years later, to DeQueen, Arkansas. The boat remained in a state of disrepair and stood on a used-car lot run by James Johnson.

In March or May 1991, James Johnson sold the boat to appellee Larry Huntsberger for $3,000.00. After acquiring the boat, Mr. Huntsberger made numerous improvements to it, including rebuilding the engine. In the summer of 1991, Mr. Gilliland returned to get the boat and was told by Guy Johnson that his son James had taken the boat from the barn. Mr. Gilliland contacted the younger Mr. Johnson and asked for the boat, but James refused to give it back to him. Mr. Gilliland filed an action claiming that James Johnson unlawfully detained his property when he removed it from storage and for an order of replevin. Later, the father, Guy Johnson, and Larry Huntsberger were named party defendants, at which time Mr. Gilliland sought an order of delivery of the boat from Mr. Huntsberger. Appellant James

Johnson was also charged with converting the motor boat to his own use.

In response to Mr. Gilliland's complaint, the appellant, James Johnson, denied the allegations in general, asserting a defense of abandonment and also "the affirmative defense of the statute of limitation which was tolled prior to May, 1988, and adverse possession because prior to and subsequent to 1988, he exercised possession of the boat in question under a claim of right, openly, publically and notoriously." James Johnson also claimed the right of set-off for storage costs against Mr. Gilliland.

A jury trial was held, and at the close of Mr. Gilliland's evidence, the appellant, James Johnson, made a motion for directed verdict, claiming that the plaintiff had failed to meet all the evidence and that his open, notorious, and continuous use of the boat gave him the right of adverse possession, and that a period of more than three years had gone by since Mr. Gilliland placed the boat in possession with Guy Johnson. Mr. Gilliland countered with the argument that James Johnson was actually acting as agent for Guy Johnson because Mr. Gilliland was without knowledge of the fact that James Johnson possessed the boat. Further, Mr. Gilliland urged, the statute did not begin to run until he discovered that James Johnson was in possession. The trial court denied James Johnson's motion. At the close of the defendant's case, James Johnson renewed his motion for directed verdict "on the grounds stated at the close of plaintiff's case," which was again denied by the trial court.

The jury was instructed, without objection, on the laws of bailment, negligence and wrongful possession, as well as the affirmative defenses of adverse possession and James Johnson's claim for "set off." The jury was furnished with interrogatories relating to bailment, negligence, and damages. In rendering its judgment in favor of Mr. Gilliland, the jury found by way of interrogatories that there was gross negligence on the part of James Johnson which was the proximate cause of damages to Mr. Gilliland, and that James Johnson was not entitled to a set-off. In addition, the jury found that Mr. Huntsberger should be ordered to deliver the boat to Mr. Gilliland and that Mr. Huntsberger should have judgment on his cross-complaint against James Johnson for damages in the sum of $20,250. As mentioned pre-

viously, a motion for JNOV or new trial was made by James Johnson, predicated on the same grounds as his motions for directed verdict, but the motion was denied.

## I. Statute of limitations

Mr. Johnson first asserts that there was no substantial evidence to support a finding that the statute of limitations for conversion had not run. He correctly states that the applicable statute of limitations is Ark. Code Ann. § 16-56-105(6) (1987), which provides a three-year statute of limitations for the "taking or injuring any goods or chattels." We further note that:

> "In suits to recover personal property, the statute of limitations and the principle of adverse possession are inseparably connected, on the theory that the statute does not begin to run until the possession becomes adverse, and a limitations statute relating to suits to recover personalty is affected by the doctrine of adverse possession by the defendant."

*Henderson* v. *First Nat'l Bank*, 254 Ark. 427, 433, 494 S.W.2d 452, 456 (1973), quoting 54 C.J.S., *Limitations of Actions*, § 119. In other words, the statute of limitations for conversion of personal property and the running of time for adverse possession will be the same.

By James Johnson's account, his father asked him to move the boat because he didn't want it in his barn anymore. Mr. Johnson assumed that, from this request, his father wanted him to have the boat and that Gilliland had abandoned it. (Guy Johnson did not testify at trial, it was explained, because he was bedridden and paralyzed.) Mr. Johnson argues that the evidence required a finding that the three-year statute of limitations had run on adverse possession and conversion. He points out that the statute of limitations for replevin or conversion begins to run at the date of his possession and exercise of control over property and not at the time of the Gilliland's demand for it. *See Pickens* v. *Sparks*, 44 Ark. 29 (1884). He then argues that it is undisputed that he exercised dominion and control over the boat in April 1988, and, therefore, that the statute of limitations had run when the suit was filed more than three years later in August 1991.

Mr. Johnson loses sight of the fact that the trial court was not required to direct a verdict based on one theory to the exclusion of all others. Even if the testimony about the removal of the boat in 1988 was undisputed, such a finding would not have entitled him to a directed verdict on Mr. Gilliland's claim. As Mr. Gilliland correctly pointed out to the trial court in response to the directed verdict motion, there were other remedies available to him with limitations that would be triggered by the later act of Mr. Gilliland's discovery that the boat was gone, thus permitting him to file his action within the proper time.

██ For example, in cases of bailment of personal property, the same three-year statute of limitations period for conversion applies, but it does not begin to run until there has been a demand by the bailor and a refusal by the bailee. *Shewmake* v. *Shifflett*, 205 Ark. 875, 171 S.W.2d 309 (1943); *Lee County Nat'l Bank* v. *Hughes*, 165 Ark. 493, 265 S.W.2d 50 (1924). The rule is essentially the same as between agent and principal. 3 Am. Jur. 2d. Agency, § 336 (1994). Similarly, in cases of fraudulent concealment, the period does not begin to run until the fraud has been discovered. *Kurry* v. *Frost*, 204 Ark. 386, 162 S.W.2d 48 (1942).

These theories of recovery were available to Mr. Gilliland, as well as conversion. Under these theories and the facts in this case, the statute of limitations would not have begun to run until Mr. Gilliland had asked for the boat and discovered it had been removed from the barn in the summer of 1991. Mr. Johnson does not dispute that these theories support the trial court's ruling nor does he argue any error in the jury's finding of responsibility, which was based on bailment and negligence instructions.

██ Obviously, the trial court found that the underlying issue was a matter of bailment and that the three-year statute of limitations did not begin to run until there had been a demand by Mr. Gilliland for the return of his property.

The case was submitted to the jury, without objection, with instructions on the laws of bailment, negligence, wrongful possession, as well as on Mr. Johnson's affirmative defense of adverse possession. Simply put, the jury found in Mr. Gilliland's favor. Under these circumstances, the trial court did not err.

## II. Restoration of the boat

Mr. Johnson's second argument is based on the jury's verdict to have the boat delivered to Mr. Huntsberger. In his directed-verdict motion, Mr. Johnson argued that the boat was incapable of restoration to Mr. Gilliland, and, on appeal, he argues that the redelivery to Mr. Gilliland should be set aside on that basis. He argues that if property sought in replevin has become so intermingled with the bailee's property so as not to be identifiable as the same property, the replevinor does not have to return the property. In support of this argument, Mr. Johnson cites *Standard Inc.*, v. *Standard Coin-op Distributors*, 238 Ark. 489, 382 S.W.2d 888 (1964). It is not clear whether Mr. Johnson is arguing that such a case requires a finding that there is no further obligation to the true owner or simply that damages must be accepted in place of the property itself. In either case, *Standard* does not support Mr. Johnson's contentions.

In the *Standard* case, the plaintiff had sent two dry-cleaning machines to the defendant for reconditioning. When the machines were not returned, the plaintiff made a request for them, but it was refused. The plaintiff filed for replevin, and, as a defense, the defendant argued that the plaintiff had not made a proper demand for a return of its goods because it was not able to identify its machines. The plaintiff prevailed and was awarded damages for the value of its machines.

On appeal, the defendant in *Standard* again argued that the plaintiff had failed to identify its goods and therefore had not made a proper demand. We pointed out that the only reason the plaintiff was unable to identify its machines was because the defendant had disassembled them and intermingled the parts with other like machine parts belonging to the defendant. We further held that, in such a case, the answer is not to deny the plaintiff his recovery, but to find that the action is one of conversion and to hold the defendant liable for the value of the property.

Obviously, this case does not support an argument that such intermingling denies the true owner any recovery. Alternatively, if Mr. Johnson is arguing that the boat was incapable of identification, there was no error to deny judgment notwithstanding the verdict on that basis. In *Standard*, there was simply

no basis for the plaintiff's identification of the constituent parts. Here, there was reasonable basis for Mr. Gilliland's identification of the boat.

### III. Remittitur

James Johnson argued below that the evidence did not support the jury's verdict for $20,250, but instead, at most, $10,000. He requested a remittitur for the difference of $10,250. The motion was denied, and on appeal he argues that this denial was error.

Remittitur is a proper remedy to seek from this court on the grounds Mr. Johnson argues. While remittitur generally is requested from this court in order to lower punitive damages that are found to be grossly excessive or that appear to be motivated by passion or prejudice, *McNair* v. *McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994), we have also held that it is appropriate when the compensatory damages awarded cannot be sustained by the evidence. *Shepherd* v. *Looper*, 293 Ark. 29, 732 S.W.2d 150 (1987). The standard of review in this case is that appropriate for a new trial motion, *i.e.*, whether there is substantial evidence to support the verdict. See Ark. R. Civ. P. 59(a)(5).

We agree with Mr. Johnson that there was no substantial evidence to fully support the jury's verdict. Mr. Huntsberger testified that he purchased the boat for $3,000, spent about $5,000 for new parts, and put in 200 to 300 hours of labor on renovations. He then stated unequivocally, when asked, that the fair-market value was $10,000: "[$10,000] is a fair-market value if I was trying — if somebody was trying to buy it from me today, yes." While Mr. Huntsberger later testified in response to a leading question, that the $10,000 did not include his labor, he offered no further basis for a determination of what that labor was worth, or if he even considered it should be part of the boat's worth. In fact, Mr. Huntsberger's testimony on cross-examination confirmed his earlier statement that, in fact, he did not believe that his labor should put the figure beyond $10,000:

> Q. If I understand correctly, then, you paid James Johnson $3000 for a boat which he says he thought was worth $1,800, but you wanted that boat and you wanted to upgrade it and you put $7,000 more in to upgrade it?
>
> A. I wanted to put it back like it was.

Q. And if the jury should restore Mr. Gilliland to his boat, then you're going to look to Mr. Johnson for $10,000, is that right?

A. I feel I should be compensated for what I have in it.

When all the testimony is read as a whole, it is clear that the only dispute on the value of the boat was whether it was a lower figure of $10,000 that he was claiming in court. Further, Mr. Huntsberger's one response to a leading question on the exclusion of his labor, with no further testimony as to the value of that labor, is not a sufficient basis to support the additional $10,250 awarded. *See Robertson* v. *Ceola*, 255 Ark. 703, 501 S.W.2d 764 (1973).

Ordinarily, a general verdict is a complete entity that cannot be divided, requiring a new trial upon reversible error. When, however, a trial error relates to a separable item of damages, a new trial can sometimes be avoided by the entry of a remittitur. *Jacuzzi Brothers, Inc.* v. *Todd*, 316 Ark. 785, 875 S.W.2d 67 (1994); *Wheeler* v. *Bennett*, 312 Ark. 411, 849 S.W.2d 952 (1993); *White River Rural Water District* v. *Moon*, 310 Ark. 624, 839 S.W.2d 211 (1992). As Mr. Johnson testified that the fair market value of the boat was $10,000, we have no hesitation in declaring that a remittitur is in order. Should Mr. Johnson submit a petition within seventeen days, requesting a remittitur of damages from $20,250 to $10,000, we will affirm as modified. Otherwise, as a general verdict cannot be divided, we must remand for a new trial of Mr. Huntsberger's cross-complaint against James Johnson. *See Jacuzzi Brothers, Inc.* v. *Todd, supra; Interstate Freeway Serv., Inc.,* v. *Houser*, 310 Ark. 302, 835 S.W.2d 872 (1992).

Affirmed as modified.

ROAF, J., not participating.