Cite as 2020 Ark. App. 214

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-19-306

| | |
|---|---|
| HERMITAGE NEWARK, LLC; HERMITAGE PROPERTIES, LLC; HERMITAGE OPERATING, LLC, D/B/A ENDURANCE SANDS AND LOGISTICS; AND DALE E. BEHAN<br><br>APPELLANTS<br><br>V.<br><br>ARKANSAS SAND COMPANY AND VOLVO FINANCIAL SERVICES, A DIVISION OF VFC, LLC<br><br>APPELLEES | **Opinion Delivered:** April 8, 2020<br><br>APPEAL FROM THE INDEPENDENCE COUNTY CIRCUIT COURT<br>[NO. 31CV-16-281]<br><br>HONORABLE MAUREEN HARROD, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Hermitage Newark, LLC; Hermitage Properties, LLC; Hermitage Operating, LLC, d/b/a Endurance Sands and Logistics; and Dale E. Behan appeal the Independence County Circuit Court judgment granting Arkansas Sand Company's (Arkansas Sand's) claim for replevin. On appeal, they argue that the circuit court erred by denying their motion to dismiss.[1] We affirm.

---

[1]In their brief, the Hermitage parties assert that the circuit court erred by denying their directed-verdict motion. However, the circuit court held a bench trial. The proper motion to challenge the sufficiency of an opponent's evidence in a nonjury case is a motion to dismiss. Ark. R. Civ. P. 50(a); *see Rymor Builders, Inc. v. Tanglewood Plumbing Co.*, 100 Ark. App. 141, 144–45, 265 S.W.3d 151, 153 (2007) ("The bench and bar often refer to a 'directed verdict' during a non-jury case. This is a misnomer. Because no jury is in the box, no verdict will be given.").

Sean Ross and Jean Hill Ross each owned 50 percent of Arkansas Sand, and Arkansas Sand owned real property housing a sand plant in Newark, Arkansas (Newark Property), subject to a mortgage held by First National Banking Company (FNBC). In 2012, FNBC filed a foreclosure action against Arkansas Sand, and on August 30, 2013, the Independence County Circuit Court entered a foreclosure decree ordering that the Newark Property be sold at a judicial sale.

On September 26, the Newark Property was sold at a public auction pursuant to the foreclosure decree. On October 3, the circuit court approved the issuance of a commissioner's deed of the Newark Property to Behan. The commissioner's deed was executed on January 22 and recorded on January 23, 2014. On June 20, Behan conveyed the Newark Property to Hermitage Newark, LLC, an entity owned by Behan and his family.

On December 8, 2016, Arkansas Sand filed the instant action against Hermitage Properties, LLC, and Hermitage Operating, LLC, d/b/a Endurance Sands and Logistics. In its complaint, Arkansas Sand sought replevin for several pieces of personal property that remained on the Newark Property at the time of the judicial sale, including a Volvo 110F front end loader (Volvo loader).

On December 20, 2016, Hermitage Properties, LLC, and Hermitage Operating, LLC, d/b/a Endurance Sands and Logistics filed an objection to notice seeking order of delivery. They asserted that Arkansas Sand's replevin action was barred by the three-year statute of limitations in Arkansas Code Annotated section 18-60-810 (Repl. 2015). They alternatively argued that Arkansas Sand had abandoned the personal property that remained

on the Newark Property at the time of the sale. On May 12, 2017, Arkansas Sand amended its complaint, joining Behan and Hermitage Newark, LLC, as parties and alleging conversion and breach-of-contract claims.[2]

The court held a bench trial on April 19, 2018. At the beginning of the trial, the Hermitage parties moved to dismiss Arkansas Sand's replevin claim. They argued that Arkansas Sand abandoned the Volvo loader as a matter of law pursuant to Arkansas Code Annotated section 18-27-103. They acknowledged that the statute was not in effect until July 2015 following the foreclosure sale, but they argued that it applied retroactively to the case. The court denied the motion.

Sam Ross testified that he and Behan entered into an oral agreement wherein Behan would create a new entity to operate the sand plant on the Newark Property and that Sam would receive a 20 percent interest in the entity in exchange for several items of his personal property that remained on the Newark property. He noted that the personal property included the Volvo loader. He stated that they reached the agreement in September or October 2013 but that Behan had breached that agreement when Behan created a new entity, Hermitage Newark, LLC, without giving him an interest. Sam testified that he asked Behan to provide him with proof of ownership in Hermitage Newark, LLC, on two different occasions and that Behan told him that his son, who is a lawyer, was drafting an agreement. He noted that he stopped assessing the personal property, including the Volvo loader, in 2013 because he believed that Hermitage Newark, LLC, owned it. He further

---

[2]On November 21, Arkansas Sand again amended its complaint to join Volvo Financial Services, a division of VFS US, LLC, due to its security interest in the Volvo loader.

testified that after the foreclosure sale, he made the initial arrangements for Scott Equipment to repair the Volvo loader and advised Scott Equipment that Behan would make the final arrangements. He acknowledged that Behan paid for the repairs.

Arkansas Sand also introduced into evidence emails from Sam to Behan dated April 26 and April 27, 2016, and an email from Behan to Sam dated April 28, 2016. In the April 26 email, Sam accused Behan of being dishonest about their agreement concerning the personal property, and he listed his personal property, including the Volvo loader, that he had given Behan permission to use. In the April 27 email, Sam again claimed that Behan had been using his personal property, and he threatened to "file charges for [the] personal property." In the April 28 email, Behan denied any wrongdoing, stated that he had purchased Sam's real property to help Sam financially, and stated that he had offered Sam the opportunity to retrieve the personal property.

Jean Hill Ross testified that she partially owns Arkansas Sand with her husband Sam and that she is also an insurance agent. She stated that she and Sam believed that they had contributed their personal property on the Newark Property to Hermitage Newark, LLC, in exchange for an interest in the new entity. She further testified that in January 2014, she completed an insurance application for Hermitage Newark, LLC, that included the Volvo loader and that she sent the application to Behan for his approval. She explained that on the application, she indicated that Hermitage Newark, LLC, was the owner of the Volvo loader because she believed that she and Sam had an interest in the entity.

Dale Behan testified that prior to the foreclosure sale, he inspected the Newark Property with Sam. He stated that Sam told him that "everything goes" with the sale. Behan

testified that he specifically asked Sam whether the Volvo loader was included with the sale and that Sam responded that it was. He acknowledged that prior to the foreclosure sale, Sam proposed acquiring a 20 percent interest in Hermitage Newark, LLC, but he denied entering into an agreement with Sam to give him an interest in the entity in exchange for the personal property. He explained that Hermitage Newark, LLC, was formed on October 15, 2013, and that the entity was created to own the Newark Property. He testified that he did not make Sam or his wife an owner of Hermitage Newark, LLC. He stated that he told Sam that he could retrieve the personal property from the Newark Property following foreclosure. He further stated that other than the Volvo loader, he is not using any of the Rosses' personal property on the Newark Property because the items are junk. He also acknowledged that Sam had "complete liberty" to access the Newark Property and that he had visited the property on numerous occasions. He testified that he had never asked Sam to act on his behalf and that he, not Sam, contacted Scott Equipment to arrange for the repair of the Volvo loader. He stated that he had spent thousands of dollars to repair the Volvo loader and that he had financed the repair cost.

At the conclusion of Arkansas Sand's testimony, the Hermitage parties moved to dismiss Arkansas Sand's replevin claim. Specifically, they renewed their basis for dismissal from the commencement of the proceedings, and they also asserted that the replevin claim is barred by the statute of limitations. The court took the matter under advisement.

Michael Spellmeyer then testified that he helped Behan make improvements to the sand plant on the Newark Property after Behan had purchased the property at the foreclosure sale. He stated that he saw Sam on the property on several occasions but that

5

Sam never informed him that Sam had an interest in Hermitage Newark, LLC. He also testified that Sam was given multiple opportunities to retrieve his personal property on the Newark Property following the foreclosure sale. After the Hermitage parties rested, they renewed their motion to dismiss at the close of all the evidence. The court again took the motion under advisement.

On June 8, 2018, the court entered a letter opinion. The court found that Arkansas Sand had failed to establish its breach-of-contract[3] and conversion claims. As to the replevin claim, the court found that Arkansas Code Annotated section 18-27-103 did not apply retroactively such that the personal property could be considered abandoned. The court instead found that Arkansas Sand had established that it was entitled to possession of the Volvo loader based on the facts that the Rosses continued to express interest in the equipment, did not relinquish title to it, and sought recovery of it. The court further found that Behan had recognized Arkansas Sand's ownership in the Volvo loader when he offered the Rosses the opportunity to retrieve it.[4]

On December 28, the court entered a judgment and incorporated its June 9 letter opinion. The court denied and dismissed Arkansas Sand's breach-of-contract and conversion claims. As to the replevin claim, the court denied and dismissed the claim as to all the

---

[3]As to the breach-of-contract claim, the court found that Arkansas Sand did not present sufficient evidence that a contract existed. The court noted that the agreement "was simply too vague, the terms were not certain and there was not a meeting of the minds."

[4]As to the other personal property listed in Arkansas Sand's complaint, the court found that Arkansas Sand had not established entitlement to the property because the Rosses had been aware that the other property was being replaced and that it made no effort to reclaim the property.

personal property except the Volvo loader. The court instead found that Arkansas Sand presented sufficient evidence that it owned the Volvo loader, and it ordered the Hermitage parties to return it within ten days. In granting the replevin claim as to the Volvo loader, the court specifically rejected the Hermitage parties' abandonment and statute-of-limitations arguments. This appeal followed.

We will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Id.* In reviewing a circuit court's findings of fact, this court gives due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded their testimony. *Strother v. Mitchell*, 2011 Ark. App. 224, 382 S.W.3d 741. We do not, however, defer to the circuit court on a question of law. *Peavler v. Bryant*, 2015 Ark. App. 230, 460 S.W.3d 298.

On appeal, the Hermitage parties argue that the circuit court erred by denying its motion to dismiss Arkansas Sand's replevin claim for the Volvo loader because (1) Arkansas Sand abandoned the property as a matter of law pursuant to Arkansas Code Annotated section 18-27-103, and (2) Arkansas Sand's replevin claim is barred by the statute of limitations in Arkansas Code Annotated section 16-56-105(5) (Repl. 2005). We first address their abandonment argument.

The Hermitage parties argue that the circuit court erred by finding that Arkansas Code Annotated section 18-27-103 did not apply retroactively to this case such that the Volvo loader could not be deemed abandoned as a matter of law. They acknowledge that section 18-27-103 became effective in July 2015, following the foreclosure sale in October

7

2013; they nonetheless contend that the court should have applied the statute retroactively because it is similar to a statute of limitations.

Arkansas Code Annotated section 18-27-103(a) provides as follows:

Upon the purchase of land at a judicial sale . . . all personal property remaining on the land or in any structure on the land shall be considered to have been abandoned if:

(1) The owner of the personal property has received notice of the sale of the land and has neither removed the personal property nor notified the purchaser in writing of the owner's claim to the personal property within thirty (30) days of recording the deed commemorating the sale.

Generally, retroactivity is a matter of legislative intent, and unless it expressly states otherwise, we presume the legislature intends for its laws to apply prospectively. *JurisDictionUSA, Inc. v. Loislaw.com, Inc.*, 357 Ark. 403, 183 S.W.3d 560 (2004). Any interpretation of an act must be aimed at determining whether retroactive effect is stated or implied so clearly and unequivocally as to eliminate any doubt. *Id.* In determining legislative intent, we have observed a strict rule of construction against retroactive operation and indulge in the presumption that the legislature intended statutes, or amendments thereof, enacted by it to operate prospectively only and not retroactively. *Id.* However, this rule does not ordinarily apply to procedural or remedial legislation. *Id.*

The strict rule of construction does not apply to remedial statutes that do not disturb vested rights or create new obligations but only supply a new or more appropriate remedy to enforce an existing right or obligation. *Bean v. Office of Child Support Enf't*, 340 Ark. 286, 9 S.W.3d 520 (2000). Procedural legislation is more often given retroactive application. *Id.* Although the distinction between remedial procedures and impairment of vested rights is often difficult to draw, it has become firmly established that there is no vested right in any

8

particular mode of procedure or remedy. *See McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007). Statutes that do not create, enlarge, diminish, or destroy contractual or vested rights, but relate only to remedies or modes of procedure, are not within the general rule against retrospective operation. *Id.* In other words, statutes effecting changes in civil procedure or remedy may have valid retrospective application, and remedial legislation may, without violating constitutional guarantees, be construed to apply to suits on causes of action that arose prior to the effective date of the statute. *Id.*

In *Lucas v. Handcock*, 266 Ark. 142, 583 S.W.2d 491 (1979), our supreme court held that Act 1015 of 1979, which concerned an out-of-wedlock child's right to inherit property from natural parents, did not apply retroactively. The court reasoned that the act was a matter of substantive rather than procedural law. *Id.* Similarly, in this case, we hold that the circuit court did not err by refusing to retroactively apply section 18-27-103. Section 18-27-103 is not similar to a statute of limitations—it addresses property rights. Thus, it is a matter affecting substantive rights, and we hold that the circuit court did not err by refusing to apply it to the instant case.

The Hermitage parties next argue that the circuit court erred by denying its motion to dismiss Arkansas Sand's replevin claim because it is barred by the three-year statute of limitations in Arkansas Code Annotated section 16-56-105(5). Specifically, they assert that there was ample evidence presented at trial showing that the Rosses contributed the Volvo loader to Hermitage Newark, LLC, immediately following the foreclosure sale in October 2013, which was more than three years before the filing of Arkansas Sand's complaint for

replevin in December 2016. In other words, they argue that the statute of limitations commenced the moment Arkansas Sand transferred possession of the Volvo loader to Behan.

A replevin action is a possessory action for the recovery of specific property. *Spear v. Ark. Nat'l Bank of Hot Springs*, 111 Ark. 29, 163 S.W. 508 (1914). Arkansas Code Annotated section 16-56-105(5) provides a three-year statute of limitations for the taking of or injury to any goods or chattels. Our supreme court has stated that the statute of limitations for replevin begins to run at the date of possession and exercise of control over property and not when a demand is made for its return. *Johnson v. Gilliland*, 320 Ark. 1, 896 S.W.2d 856 (1995) (citing *Pickens v. Sparks*, 44 Ark. 29 (1884)). Our supreme court has further stated that

> [i]n suits to recover personal property, the statute of limitations and the principle of adverse possession are inseparably connected, on the theory that the statute does not begin to run until the possession becomes adverse, and a limitations statute relating to suits to recover personalty is affected by the doctrine of adverse possession by the defendant.

*Johnson*, 320 Ark. at 5, 896 S.W.2d at 858 (quoting *Henderson v. First Nat'l Bank*, 254 Ark. 427, 433, 494 S.W.2d 452, 456 (1973)).

In the context of adverse possession, if the original use and possession was permissive, it cannot become adverse until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice; the evidence of the adverse holding when the original entry is by permission must be very clear. *Tolson v. Dunn*, 48 Ark. App. 219, 893 S.W.2d 354 (1995); *Mikel v. Dev. Co., Inc.*, 269 Ark. 365, 602 S.W.2d 630 (1980).

10

Whether possession is adverse to the true owner is a question of fact. *Tolson*, 48 Ark. App. 219, 893 S.W.2d 354.

In this case, we hold that the circuit court did not err by finding that Arkansas Sand's replevin claim is not barred by the statute of limitations. Even though the evidence shows that Behan assumed possession of the Volvo loader following the foreclosure sale, the evidence also supports a finding that the possession was not adverse. Both Spellmeyer and Behan testified they had told Sam that he could retrieve the personal property on the Newark Property after the sale. The April 2016 emails between Sam and Behan further show that Behan recognized Sam's ownership interest in the property when he admitted that he had told Sam that he could retrieve the personal property. The circuit court further found that after the sale, the Rosses continued to express interest in the Volvo loader. Given the evidence that Behan's possession was not adverse, we cannot say that the circuit court erred by finding that Arkansas Sand's claim was not barred by the three-year statute of limitations in Arkansas Code Annotated section 16-56-105(5).

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Murphy, Thompson, Arnold, Skinner & Castleberry*, by: *Kenneth P. "Casey" Castleberry*, for appellants.

*Fuller Bumpers*, for separate appellee Arkansas Sand Company.