BUILDER'S TRANSPORT, INC., and Robert Lawrence
Claussen *v.* Lincoln WILSON

95-899                                                914 S.W.2d 742

Supreme Court of Arkansas
Opinion delivered February 12, 1996

*Arnold, Grobmyer & Haley,* by: *Jacob Sharp, Jr.* and *David H. Pennington,* for appellant.

*Wright, Chaney, Berry & Daniel. P.A,* by: *William G. Wright,* for appellee.

ROBERT H. DUDLEY, Justice. Lincoln Wilson was injured when his car was struck by a tractor-trailer owned by Builders Transport, Inc., and driven by Robert Claussen. Wilson filed suit against Builders and Claussen, and the jury returned a verdict of $245,000. Judgment was entered for the amount of the verdict. Builders and Claussen appeal and contend that the award is excessive. We affirm the judgment.

When an award of damages is alleged on appeal to be excessive, the appellate court reviews the proof and all reasonable inferences most favorably to the appellee and determines whether the verdict is so great as to shock the appellate court's conscience or demonstrate passion or prejudice on the part of the trier of fact. *Warhurst* v. *White,* 310 Ark. 546, 838 S.W.2d 350 (1992). In determining whether the amount of damages is so great as to shock the conscience, the appellate court considers such elements as past and future medical expenses, permanent injury, loss of earning capacity, scars resulting in disfigurement, and pain, suffering, and mental anguish. *Wheeler* v. *Bennett,* 312 Ark. 411, 422, 849 S.W.2d 952, 958 (1993). The determination is made on a case-by-case basis as "precedents are of scant value in appeals of this kind." *Matthews* v. *Rodgers,* 279 Ark. 328, 335, 651 S.W.2d 453, 457 (1983) (citation omitted); *Mustang Elect. Servs.* v. *Nipper,* 272 Ark. 263, 613 S.W.2d 397 (1981). "A jury has much discretion in awarding damages in personal injury cases." *Bill Davis Trucking, Inc.* v. *Prysock,* 301 Ark. 387, 391, 784 S.W.2d 755, 757 (1990) (citations omitted).

In the case at bar, Wilson suffered injuries to his back and neck, a torn rotator cuff in his left shoulder, and cuts and bruises to his face, head, right shoulder, arms, and legs. In the months following the accident, he was treated for continued and increasing pain and tenderness in his left shoulder by Dr. Mark Jansen, a general practioner. Dr. Jansen subsequently recommended that Wilson go to an orthopedic surgeon for further observation. He did so, and magnetic resonance imaging revealed that his left rotator cuff was torn.

Dr. Scott Bowen, an orthopedic surgeon, performed surgery to repair the torn rotator cuff. Dr. Bowen described the surgery as requiring a three-to-four-inch incision into the front of the shoulder. This procedure splits the muscle to reveal the underlying deeper tissues. Dr. Bowen testified:

> [T]he bursal covering is opened and the tendon is then seen. And it is a deep structure, and it was torn and retracted. It required a fair amount of mobilization of the tissues and advancing the tissues down, forming a little bony trough and bringing structures out through the bone, so it's a fairly extensive procedure.

Dr. Bowen described appellee's tear as being "quite large" and "a broad, retracted tear." He testified that "the tissue was actually pulled away" and required "immobilizing or exposing more of this tissue and moving it to advance it out to where it can be repaired." He testified that following this type of surgery, the arm is placed in a pillow-type splint for approximately three weeks. The patient then undergoes therapy that progresses through three months following surgery.

Dr. Bowen testified that Wilson will have some permanent loss of normal function. He rated the impairment to Wilson's left arm at eight percent (8%), which translates into a five percent (5%) impairment to the body as a whole. He testified that Wilson might need medication or injections in the future to control pain and problems with his left shoulder. He testified that, on rare occasions, an individual suffers a re-tear and will require a second surgery. Finally, he expressed the opinion, within a reasonable degree of medical certainty, that Wilson's torn rotator cuff was caused by the collision.

Approximately eight months after the surgery, Wilson returned to Dr. Jansen and stated that he had continued pain in his left shoulder. A clinical test performed at that time indicated that the rotator cuff was torn. Dr. Jansen recommended continued medication, rest, and modification of activities.

Wilson had contracted polio as an infant. Throughout his life, the disabilities resulting from polio had affected the use of both of his feet and his right arm. As a result, he relied heavily on his left arm in going about his daily activities. He used his left arm to get out of chairs and to pull himself up stairways. He testified that his left arm was his life.

Testimony established that Wilson had been self-sufficient before the accident. He lived alone, drove a car, did his own housework, worked in his yard, and enjoyed various other activities, including singing at senior adult dances. He was fifty-seven years old at the time of the accident.

After the accident, Wilson suffered increasing pain and inability to use his left arm, the arm on which he relied. Following the surgery to repair the torn rotator cuff, he remained in the hospital for three days. While in the hospital, he was unable to take care of his personal needs such as bathing and eating. His sister and nurses bathed and fed him. Upon returning home, he was unable to take care of his bodily functions, such as cleaning himself after bowel movements, and was concerned about the way he smelled. For six weeks following the surgery, Wilson had to ask people to run errands for him, and a home-health service bathed him, took his temperature and blood pressure, and changed his bandages.

Wilson's neck and back continue to hurt. He has painful "shoulder pops" on a daily basis. He now has difficulty getting out of chairs and climbing stairs. He has difficulty eating.

Before the accident, Wilson used hand tools and worked around his home. He cleaned his house. He is no longer able to do these things. He hired an individual to do his outdoor housework at a cost of $115. He pays thirty dollars a month to have his house cleaned.

He now has a fear of driving. He does not participate in activities as he did before the accident. He is afraid he will be

required to go into a nursing home at an early age as a result of the injury to his left arm. He continues to suffer pain in his neck, shoulder, and back, and is unable to properly use his left arm.

There was evidence that Wilson will need future medication and injections and possibly physical therapy. In addition, Wilson presented evidence that his rotator cuff was not intact eight months after the repair surgery. He did not establish a sum certain for future costs. However, "[f]uture medical expenses do not require the same degree of certainty as past medical expenses." *Matthews* v. *Rodgers*, 279 Ark. 328, 335, 651 S.W.2d 453, 457 (1983). Wilson presented evidence of his past medical expenses, including a medical expense summary, and "[i]t is not speculative or conjectural to calculate future medical expenses where there is a history of medical expenses that have accrued as of the date of trial, particularly where there is also a degree of medical certainty as to the need for future medication." *Bill Davis Trucking, Inc.* v. *Prysock*, 301 Ark. 387, 392, 784 S.W.2d 755, 757-758 (1990). Future medical expenses were an appropriate element of damages for consideration.

Wilson presented proof of permanency of his injury through his own testimony and that of his physicians. He testified as to his ongoing pain and disability. His physicians testified as to the likelihood that he will have some pain and discomfort in the future and some need for exercises, modification of activities, pain medications, and injections. Dr. Bowen testified that he rated Wilson as having an 8% impairment rating to his left upper extremity, which translates into a 5% impairment rating to the body as a whole.

Wilson presented ample proof of pain and suffering, through his own testimony and that of his doctors and friends and relatives. He suffers constant pain in his neck and back and is unable to raise his arm above his head without pain or discomfort.

He also presented ample proof of mental anguish as a result of the injuries he suffered in the collision. Prior to the accident, he was able to take care of himself and enjoy social activities. Now he is unable to take care of himself and worries about his personal hygiene. He no longer enjoys social activities as he did

prior to the accident. He is unable to eat normally and is embarrassed by spilling food on himself. He is not able to keep his house as he did before the accident. He is concerned about the cost of hiring people to do the jobs around his house. He is afraid of entering a nursing home at an early age because he is no longer able to care for himself as a result of the injury to his left arm. The Arkansas mortality table introduced at trial showed him to have a life expectancy of 23.49 years.

The proof in this case supported the conclusion that, not only did Wilson suffer a permanent injury which causes him pain, discomfort, and inability to use his left arm properly, but it also drastically changed his life. The verdict of $245,000 is not so great as to shock the conscience of the court or to demonstrate passion or prejudice on the part of the jury. Consequently, we affirm the judgment.