Lorene ELLIS *v.* Jean PRICE

98-1378                                          990 S.W.2d 543

Supreme Court of Arkansas
Opinion delivered May 27, 1999

*Sandra Trotter Phillips*, for appellant.

*Mitchell, Blackstock, Barnes, Wagoner & Ivers*, by: *Marcia Barnes*, for appellee.

W. H. "Dub" Arnold, Chief Justice. This case arose when appellee Jean Price filed a complaint against appellant Lorene Ellis and a co-defendant, Henrietta Glayson, contending that they had falsely and maliciously accused the appellee of adultery and that statements made by them were defamatory *per se*, in that they defamed appellee's reputation to her husband.

Knowing that appellee was three months pregnant, appellant and Ms. Glayson telephoned appellee's husband on May 9, 1995, and alleged to him that appellee was having an affair with another man and that the baby appellee was carrying may be the other man's child. On May 16, 1995, appellee suffered a miscarriage. Appellee alleged in her complaint against appellant and Glayson that because of the proximate result of the statements to her hus-

band, she suffered injury to her reputation, personal humiliation, embarrassment, weight loss, difficulty sleeping, and loss of appetite. The record is clear that appellee had already suffered complications with her pregnancy and therefore did not allege that appellant's statements were the proximate cause of her miscarriage.

A motion in limine was filed by appellant and Glayson the day before trial requesting that evidence concerning appellee's pregnancy and subsequent miscarriage be excluded from the trial because the probative value of such evidence would be greatly outweighed by the prejudice to the defendants. On the day of trial, the court ruled on the motion in limine, ordering that neither the plaintiff nor any of her witnesses could testify that statements made to her husband were the proximate cause of the miscarriage, but that the plaintiff would be allowed to discuss the pregnancy and miscarriage as to the plaintiff's state of mind.

Although motions for directed verdicts were made, the case proceeded to the jury and the jury found in favor of the appellee, awarding her damages in the amount of $40,000.00 from each of the defendants, for a total of $80,000.00. The appellee was awarded from each defendant $20,000.00 in compensatory damages and $20,000.00 in punitive damages. The trial court entered a judgment on April 30, 1998, awarding these damages with interest to be paid at 6% per annum. Appellant and Glayson filed motions for judgment notwithstanding the verdict, or alternatively for remittitur of the jury award, or a new trial. All motions were denied.

This appeal followed, in which appellant seeks to have the judgment overturned. She asserts the following two points on appeal:

1) The court erred in denying the defendants' motion in limine to exclude testimony from the plaintiff, her witnesses, and her counsel concerning her pregnancy and subsequent miscarriage, in a defamatory *per se* case.

2) The court erred in the following ways: by allowing the case to proceed to the jury on the evidence; by allowing the

$80,000.00 jury award in compensatory and punitive damages to stand; by denying the defendants' motion for either a directed verdict, judgment notwithstanding the verdict, remittitur of the jury award, or a new trial.

We disagree.

## I.   Whether the court erred in denying the defendants' motion in limine to exclude testimony from the plaintiff, her witnesses, and her counsel concerning her pregnancy and subsequent miscarriage, in a defamatory per se case.

A motion in limine was filed by appellant and Glayson the day before trial, requesting that evidence concerning appellee's pregnancy and subsequent miscarriage be excluded from the trial because the probative value of such evidence would be greatly outweighed by the prejudice to the defendants. On the day of trial, the court ruled on the motion in limine, ordering that neither the plaintiff nor any of her witnesses could testify that statements made to her husband were the proximate cause of the miscarriage, but that the plaintiff would be allowed to discuss the pregnancy and miscarriage as to the plaintiff's state of mind.

A trial judge may exclude evidence, although relevant, if its probative value is substantially outweighed by the danger of unfair prejudice. A.R.E. Rule 403. The standard of review on appeal is whether the trial court committed a manifest abuse of discretion in its ruling. *Id.*; *Peters v. Pierce*, 314 Ark. 8, 858 S.W.2d 680 (1993); *Bennett v. State*, 297 Ark. 115, 759 S.W.2d 799 (1988). In the absence of abuse of discretion, the appellate court will not reverse. *Benson v. Shuler Drilling Co.*, 316 Ark. 101, 871 S.W.2d 552 (1994); *Gipson v. Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992).

Although appellant contends that the trial court erred in denying her motion in limine to exclude certain evidence in a defamatory *per se* case, appellant cites no authority in support of her argument, other than simply restating A.R.E. 403. This Court has said on numerous occasions that it will not consider an issue if the appellant has failed to cite any convincing legal author-

ity in support of her argument. *Craft v. City of Fort Smith*, 335 Ark. 417, 984 S.W.2d 22 (1998); *Porter v. Harshfield*, 329 Ark. 130, 948 S.W.2d 83 (1997); *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997). Appellant's failure to cite authority or make a convincing argument is sufficient reason for affirmance of the trial court's ruling on this point. *Williams v. Martin*, 335 Ark. 163, 169, 980 S.W.2d 248 (1998), *citing Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). It is certainly not apparent without further research that appellant's argument is well-taken. *Id., citing Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996).

■ In addition, appellee's counsel clarified in her opening statement that appellee was not contending that her miscarriage was a result of the phone calls made by appellant and Glayson. Appellee's counsel stated as follows:

> Mrs. Price is not contending that this phone call or any action by Ms. Ellis or Ms. Glayson had anything to do with that miscarriage because there will be evidence that there was already a problem with the pregnancy and a heartbeat problem with the fetus. I wanted to clarify to you that we are not asking you to consider that as any damages or even to assume or imply that we are contending in any way that her miscarriage was a result of this phone call or why we are coming to court.

Further, the trial judge gave a cautionary instruction to the jury that this was not part of appellee's case, and no objection was made by appellant to the instruction. For the foregoing reasons, we hereby affirm the trial court on this point.

*II. Whether the court erred in the following ways: by allowing the case to proceed to the jury on the evidence; by allowing the $80,000.00 jury award in compensatory and punitive damages to stand; by denying the defendants' motion for either a directed verdict, judgment notwithstanding the verdict, remittitur of the jury award, or a new trial.*

■ Directed-verdict motions are treated as challenges to the sufficiency of the evidence. *Pettigrew v. State*, 64 Ark. App. 339, 984 S.W.2d 72 (1998). When considering a motion for directed verdict made by a defendant, the plaintiff's evidence, and

all reasonable inferences therefrom, are examined in the light most favorable to the plaintiff. *Dodson v. Charter Behavioral Health Sys., Inc.*, 335 Ark. 96 (1998); *See also, Avery v. Ward*, 326 Ark. 829, 934 S.W.2d 516 (1996). A directed-verdict motion should be granted only if the evidence would be so insubstantial as to require a jury verdict for that party to be set aside; evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other, or if it does not pass beyond mere suspicion or conjecture. *See City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995); *St. Paul Fire & Marine Ins. Co. v. Brady*, 319 Ark. 301, 891 S.W.2d 351 (1995).

█ We held in the case of *United Ins. Co. of America v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998), that a plaintiff in a defamation case must prove reputational injury in order to recover damages. In *United Ins.*, the doctrine of presumed damages in a defamation *per se* case was abolished, and all prior inconsistent decisions were overruled.

Appellant asserts that her motion for directed verdict should have been granted. However, a review of the record indicates that there was sufficient evidence in this case to proceed to the jury. In *Hogue v. Ameron, Inc.*, 286 Ark. 481, 695 S.W.2d 373 (1985), we held that a plaintiff's testimony that his reputation was injured is enough to take the case to the jury in a defamation case. In *Hogue*, the defendant wrote a letter to Hogue's police supervisor, complaining about driving an unlicenced vehicle and yelling obscenities. The accusations were untrue. When Hogue sued, the only evidence of injury to his reputation was his testimony and that of another witness who testified "rather vaguely" that Hogue's reputation changed for the worse about the time of the investigation of the accusations. *Id.* at 483. The trial court granted a motion for directed verdict. We reversed and remanded the case.

█ A plaintiff must establish actual damage to his reputation, but the showing of harm is slight. *Mitchell v. Globe International Publishing, Inc.*, 773 F.Supp. 1235 (W.D. Ark. 1991). A plaintiff must prove that the defamatory statement(s) have been

communicated to others and that the statements have detrimentally affected those relations. The law does not require proof of actual out-of-pocket expenses.

In the instant case, appellee testified that the defamation had damaged her reputation and her relationship with her husband. The testimony revealed that appellee's husband was angry. His actions indicated he did believe the accusations, although he denied believing them. He did not sleep in the same room with her beginning the night of the phone call. When he would pass her in the house, he would make sure she did not touch him; and, he would not have any conversation with her for a long time. They did not sleep together for two to three months. Appellee went home to Memphis at one point and had little contact with her husband. She had not planned to stay in Memphis, but as she testified, "There was really no reason to be there [Little Rock] . . . we didn't have a relationship . . . so I just took my child and we just went home for the summer."

Testimony further revealed that after the phone call, appellee's husband questioned her about everywhere she went and began doubting her. He testified that the allegations about his wife and the other man being alone behind locked doors "disturbed" him. He testified that he asked appellee before she filed the lawsuit to be honest with him and tell him if anything had happened. He said, "I think that hurt her because she knew that I always had trust in her and I've never doubted her before."

■ Appellee's testimony, coupled with her husband's testimony, was more than sufficient to establish harm to reputation and that the statements had detrimentally affected the relationship between appellee and her husband. We hold that when viewed in a light most favorable to the plaintiff, the evidence presented in this case was certainly sufficient for this case to go to the jury. Therefore, we hold that the trial court did not err in denying appellant's motion for a directed verdict.

■ In *United Ins. Co. of America v. Murphy, supra,* we further articulated the standards of review of allegations of exces-

sive damage awards, remittitur, and punitive damages, which the appellant in the instant case has also alleged. We held as follows:

> When an award of damages is alleged on appeal to be excessive, we review the proof and all reasonable inferences most favorable to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury. *Builder's Transp., Inc. v. Wilson,* 323 Ark. 327, 914 S.W.2d 742 (1996).

*Id.* at 371.

> [R]emittitur is appropriate when the compensatory damages awarded cannot be sustained by the evidence. *Johnson v. Gillilan,* 320 Ark. 1, 896 S.W.2d 856 (1995).

*Id.* at 372.

> Turning to the issue of punitive damages, when reviewing such an award, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *McLaughlin v. Cox,* 324 Ark. 361, 922 S.W.2d 327 (1996). Punitive damages are to be a penalty for conduct that is malicious or done with the deliberate intent to injure another. *Id.*

*Id.* at 372. We further concluded in *United Ins.* that where, in light of the evidence, the jury could have concluded that appellants displayed a conscious indifference for appellee and that their acts were done with the deliberate intent to injure her, the amount of punitive damages did not shock our conscience. *Id.* at 372.

■ In the instant case, given the admission by appellant and Glayson that they made the phone calls to appellee's husband with the intent to tell him of the alleged adultery, knowing that appellee was pregnant and had had complications with her pregnancy and was supposed to avoid stress, it is highly possible that the jury could have concluded that appellant displayed a conscious indifference for appellee and that appellant's acts were done with the deliberate intent to injure appellee.

■ Further, the record is replete with evidence of appellant and Glayson's malice and reckless indifference to the effect the allegations would have on appellee. Neither appellant nor Glayson investigated the facts by contacting or confronting appellee. Glayson did not even know appellee. Donnie Coffman, the man with whom appellant alleged appellee was having an affair, told appellant several times that he and appellee were not having a sexual relationship. Appellant told another party, Cornelius Roberts, that "all this would stop if [Coffman] repaid a debt." Malice was abundant in this case. Under these circumstances, it does not seem shocking that the jury would have assessed a $20,000.00 punitive penalty against appellant.

■ As far as the question of remittitur, as stated previously, remittitur is appropriate when the compensatory damages awarded cannot be sustained by the evidence. *Johnson v. Gillilan*, 320 Ark. 1, 896 S.W.2d 856 (1995). Again, we review the proof and all reasonable inferences most favorable to the appellee and determine whether the verdict is so great as to shock our conscience or demonstrate passion or prejudice on the part of the jury. *Builder's Transp., Inc. v. Wilson*, 323 Ark. 327, 914 S.W.2d 742 (1996). In light of the evidence in this case, and because the standard is whether the verdict is so great as to shock the conscience of the court, the jury award of $20,000.00 compensatory damages was clearly not excessive.

■ ■ Finally, a judgment notwithstanding the verdict is not proper where there is substantial evidence to support the jury verdict. *Sparks Reg'l Med. Ctr. v. Smith*, 63 Ark. App. 131, 976 S.W.2d 396 (1998); *Rathbun v. Ward*, 315 Ark. 264, 866 S.W.2d 403 (1993). On appeal, we again review the evidence and all reasonable inferences deducible in the light most favorable to the party against whom the judgment notwithstanding the verdict may be rendered. Whether the evidence is substantial is a question of law. Substantial evidence means evidence that is of sufficient force and character that it will compel a conclusion one was or another. The evidence must force the mind beyond mere suspicion or conjecture. *Id.*

Again, there is sufficient evidence in this case to compel the conclusion that appellant slandered appellee. Therefore, the trial court did not err in failing to grant appellant's motion for judgment notwithstanding the verdict. We hold that for all of the foregoing reasons, the trial court should be affirmed on all points.

Affirmed.

GLAZE, J., concurring, see *United Ins. Co. of America v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998) (GLAZE, J., dissenting).