Cite as 2021 Ark. App. 498

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-19-528

| | |
|---|---|
| A&B PAWN SHOP D/B/A WEBB'S SPORTING GOODS <br> APPELLANT <br><br> V. <br><br> MACK'S SPORT SHOP, LLLP, D/B/A MACK'S PRAIRIE WINGS <br> APPELLEE | **Opinion Delivered** December 8, 2021 <br><br> APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT, SOUTHERN DISTRICT [NO. 01DCV-17-53] <br><br> HONORABLE DAVID G. HENRY, JUDGE <br><br> AFFIRMED |

## MIKE MURPHY, Judge

This is a dispute between business competitors. Appellant, A&B Pawn Shop d/b/a Webb's Sporting Goods (Webb's) alleged that appellee, Mack's Sport Shop, LLLP, d/b/a Mack's Prairie Wings (Mack's), made disparaging remarks about Webb's and that Mack's pressured vendors to refuse to do business with Webb's. After Webb's filed suit, the circuit court denied Webb's' motion to compel discovery and later granted summary judgment in favor of Mack's. Webb's appeals, arguing that the circuit court erred in granting summary judgment and in denying its motion to compel discovery. We affirm.

### I. *Background*

Mack's has operated a sporting goods store in Stuttgart specializing in duck-hunting gear since the 1940s. Webb's began as a pawn shop in DeWitt around 2006 and later began

selling sporting goods around 2013. The parties sell many of the same lines of hunting equipment and apparel. Mack's expressed to its vendors and suppliers its concern and displeasure over potentially losing business to a nearby competitor, and it suggested that the vendors and suppliers not do business with Webb's or risk losing Mack's as a customer. Webb's also received reports from vendors about these communications.

Webb's subsequently filed suit against Mack's on April 11, 2017, asserting causes of action for tortious interference with a business expectancy, defamation, and violation of the Arkansas Deceptive Trade Practices Act (ADTPA). Webb's sought compensatory and actual damages of $2 million; liquidated and punitive damages of $3 million; and its attorney's fees and costs. Webb's later amended its complaint to assert a cause of action for violation of the Arkansas Unfair Practices Act (AUPA). In its amended complaint, Webb's identified three statements Mack's made to a manufacturer's representative that it alleged was defamatory:[1]

> Webb's is "part pawnshop/sporting goods with no technician what so ever [sic] and I don't see how they could set up a customer properly."

> "If you would not set Webb's up as a dealer I would greatly appreciate and will continue selling and promoting Hoyts the best I can."

> "You risk damage to you [sic] brand due to the simple fact that they don't know archery like we do. If they have an archery tech, he is nowhere near as qualified, nor respected in this industry as or [sic] archery department manager/tech Jody Smith and tech Jody Price."

---

[1]During discovery, Webb's also learned of other alleged defamatory or derogatory statements made by Mack's or its employees, which are set forth hereinafter.

Mack's answered both the complaint and the amended complaint. It admitted that it made some of the communications but denied that they were defamatory and instead affirmatively pleaded that some of the statements were true, substantially true, or a matter of opinion. It also alleged that its communications were protected and that it had a privilege to compete with Webb's.

On November 6, 2018, Mack's moved for summary judgment asserting that it was entitled to summary judgment because Webb's failed to prove (1) any improper interference with a contract or business expectancy because the actions of Mack's were either privileged or otherwise legitimate competition; (2) that statements by Mack's were defamatory or that Webb's suffered damages because of those statements; (3) a violation of the ADTPA; and (4) a violation of the AUPA. In Mack's' supporting brief, it argued that Webb's failed to prove damages on its tortious-interference, defamation, and ADTPA claims. It also argued that there was no evidence to support Webb's' AUPA claim.

One week later, on November 13, Webb's moved to compel discovery from Mack's. The motion asserted that in July 2017, Webb's had propounded discovery to Mack's seeking information on Mack's' sales of sporting goods manufactured by Drake Waterfowl, but Mack's objected to the request and did not produce the information. Webb's stated that it learned in two October 2018 depositions that Mack's did offer Drake products for sale on Walmart's website. When Webb's inquired of Mack's' counsel regarding agreements with Walmart, counsel said that there was no Walmart agreement responsive to the requested discovery. Webb's also said that it was propounding a second set of discovery dealing solely with Mack's' arrangement with Walmart to sell Drake products. In its supporting brief,

3

Webb's argues that, by selling on Walmart's website, Mack's was going against Drake's wishes because Drake did not want its products sold on the Walmart website.

In response to the motion to compel, Mack's argued that it truthfully responded to Webb's' discovery because it did not have sales through Walmart for the five years preceding July 2017 when the discovery was propounded. Mack's also asserted that the motion to compel was frivolous and sought its attorney's fees and costs.

Webb's responded to Mack's' motion for summary judgment, arguing that summary judgment was improper because discovery was incomplete. Webb's argued there was a pending motion to compel and that it was continuing to develop expert testimony. Webb's argued that a jury should decide whether Mack's' actions were improper. Webb's also argued the merits of its claims, setting forth several additional statements made by Mack's that Webb's contends support its claims.

A hearing on Webb's' motion to compel was held on January 22, 2019. The hearing focused on Mack's' sale of Drake Waterfowl products through Walmart's website. At the conclusion of the hearing, the circuit court denied Webb's' motion. In its written order filed on January 31, the court found that the information sought had no relevance and was not reasonably calculated to lead to the discovery of relevant evidence.

On March 12, 2019, a hearing was held on Mack's' motion for summary judgment. At the conclusion of the hearing, the court ruled from the bench and granted the motion. The court's order memorializing its ruling was entered on March 22. Neither the court's ruling from the bench nor its written order explained the court's reasoning other than there

were no genuine issues of material fact and that Mack's was entitled to judgment as a matter of law. This appeal followed.

## II. *Summary Judgment*

### A. Standard of Review

Webb's contends the circuit court erred in granting Mack's' motion for summary judgment and dismissing its claims for tortious interference, defamation, violations of the ADTPA, and violations of the AUPA. We disagree. The law is well settled that summary judgment is to be granted by a circuit court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Skalla v. Canepari*, 2013 Ark. 415, at 8–9, 430 S.W.3d 72, 79. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* On appellate review, we determine if summary judgment was appropriate by deciding whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* Our review focuses not only on the pleadings but also on the affidavits and documents filed by the parties. *Id.*

### B. Damages

The disposition of Webb's' appeal for the three causes of action for tortious interference, defamation, and violations of the ADTPA rests on the proof of damages. To

that end and to avoid repetition, below is a summary of the evidence of damages presented below by Webb's.

In its response to Mack's' motion for summary judgment, Webb's first acknowledged that Mack's had alleged that "plaintiff incurred no damages as a result of such actions" in its discussion of its claim for tortious interference.[2] However, Webb's did not discuss why this allegation was incorrect under that section. Instead, Webb's stated the following regarding damages under the discussion of its claim for defamation:

> Defendant's first argument at page 9 of its brief is that no defamation claim is proper because plaintiff did not suffer any damages. Defendant even argues that "Plaintiff admitted that it has no damages caused by these allegedly defamatory statements." That statement is patently false. In fact, plaintiff was asked in his deposition about any damages he had incurred as a result of the defamatory emails, and his testimony to that effect is attached here as Exhibit 7, deposition of Bobby Webb, at pgs. 60–65 and 85–87). I could not be clearer that plaintiff testified that because of the emails, he was required to initially purchase more Hoyt products than he otherwise would have been required to buy from Hoyt and that he still had a portion of that inventory which he had paid for but been unable to sell. He also testified about the embarrassment and humiliation he suffered when he was approached by the Hoyt representative to whom defendant's emails had been sent when that representative approached him at a Salt Lake City sales event and finally told him "just do the best you can do."

Webb's also stated the following regarding damages in its response in the discussion of its claim for violations of the ADTPA:

> Plaintiff has incurred actual damages by the actions complained about against defendant, as already argued; plaintiff has been defamed by defendant, as already argued; and all of the actions of defendant, particularly when taken as a whole to evidence defendant's obvious intention of destroying competition and interfering with plaintiff's business, constitute unconscionable, false and deceptive acts and practices.

---

[2]We recognize that Webb's has argued that this case could be considered as one cause of action—tortious interference—with the other causes of action being used to show the impropriety of Mack's' actions.

6

Webb's also submitted an affidavit from an alleged expert economist, Gregory L. Hamilton, PhD, that opined without much explanation that Webb's' "economic losses will greatly exceed several hundred thousand dollars." Webb's further offered the deposition testimony of Bobby Webb, Jr., the owner of Webb's. Mr. Webb testified that Webb's was "hurt . . . in [its] pocketbook." He explained that Hoyt required Webb's to purchase more Hoyt products than Webb's wanted and that Webb's had been financially damaged because it could not receive all the products it needed. Finally, Mr. Webb opined during his deposition that if he had been able to purchase products from various brands, Webb's could have made a substantial profit on the basis of its set profit margin if the products had sold. As one example, Mr. Webb testified that "[i]f I had bought a million dollars in Drake [products], and, again it is another 100 percent mark up to me, it doubles your money, so the low end of it is I would make $600,000 to $700,000 if I had bought $1 million worth."

In its appellate brief, Webb's offers very little argument regarding the damages it allegedly sustained. Specifically, Webb's stated the following:

> Damages included urging suppliers to refuse to sell inventory to Webb's. . . . Exhibit 1, Email from Chuck Lock, Executive Vice President of Mack's, . . . dated September 24, 2015.

> There was a loss of income because of the inability to purchase and then sell products from suppliers due to these statements. . . . Webb listed damages suffered precisely, in dollars and cents.

(Record citations omitted.) With this evidence in mind, we now discuss whether Webb's offered sufficient proof in response to Mack's' motion for summary judgment.

7

C. Tortious Interference with a Contract

The elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Baptist Health v. Murphy*, 2010 Ark. 358, at 15, 373 S.W.3d 269, 281.

Webb's generally argues that Mack's tortiously interfered with Webb's' contracts with some of the vendors that serviced both Webb's and Mack's by making derogatory and untruthful statements regarding Webb's' business and forcing the vendors to choose to do business with either Mack's or Webb's. Webb's argued that Mack's' tortious interference with these vendors caused Webb's to sustain damages to its business.

Assuming arguendo that Mack's did intentionally interfere with the business expectation of Webb's, which we specifically do not address,[3] to sustain a claim for tortious interference, Webb's must also prove "resultant damage." In *Baptist Health*, the supreme court stated the following regarding damages in a summary-judgment context for tortious interference:

> On appeal, Baptist first argues that the circuit judge erred in holding that the appellees were not required to prove the amount of damages with reasonable certainty, contending that it permitted the appellees to speculate as to an unascertainable harm. Baptist further avers that because the appellees did not seek

---

[3]Because we dispose of Webb's' causes of action for defamation, tortious interference with contract, and violation of the Arkansas Deceptive Trade Practices Act for lack of proof of damages, it is unnecessary for this court to determine whether the alleged conduct and statements of Mack's were defamatory, misleading, or improper as defined by these separate causes of action.

money damages, the circuit court sought "to transform an ordinary tort action into a vehicle for unbridled use of injunctive power." The appellees and intervenors argue that Baptist confuses the need to prove that they were damaged with a requirement that they quantify monetary damages.

The appellees' argument is persuasive on this point. The foundational element of damages to sustain an action in tort is distinct from the specific monetary loss a plaintiff may be able to recover as damages. *See Simpson Housing Solutions, LLC v. Hernandez*, 2009 Ark. 480, 347 S.W.3d 1 (one subclass appropriate for class certification on a contract claim because damages was not a foundational element, but the circuit judge properly denied certification of another subclass attempting to bring tort claims because damages was a foundational element and could not be bifurcated for individual resolution). *Rather, it is a requirement that the plaintiff prove the defendant proximately caused some damage, or injury, to the plaintiff. See id*. Here, the circuit judge specifically found that the Policy injured the appellees because, in at least one instance, an appellee was precluded from treating his patients and thus lost the professional fees associated with that treatment. The judge also noted that the appellees were harmed because they were less likely to receive referrals, referred to by one witness as "the lifeblood of the existence of a specialty physician," as a result of the Policy. The judge's findings are not clearly erroneous or clearly against the preponderance of the evidence.

*Baptist Health*, 2010 Ark. 358, at 24–25, 373 S.W.3d at 286 (footnote omitted and emphasis added).

Mack's argued, *inter alia*, in its motion for summary judgment below that Webb's did not sustain any damages as a result of Mack's' alleged tortious interference. Accordingly, in its response to Mack's' motion for summary judgment, Webb's was required to prove that Mack's "proximately caused some damage, or injury, to the plaintiff." *Id*. However, in its response to Mack's' motion for summary judgment, Webb's did not directly address damages under its argument for tortious interference and did so only in the context of its defamation and ADTPA claims.[4] As already outlined above, Webb's provided statements

---

[4]Again, we recognize that Webb's contends this case could be considered as one cause of action—tortious interference—with the other causes of action being used to show the impropriety of Mack's actions.

from an alleged expert economist who opined that Webb's' "economic losses will greatly exceed several thousand dollars," and it presented testimony from the deposition of Bobby Webb, Jr., that the Hoyt brand required Webb's to buy more product than it wanted to buy and that there was a loss of income because of the inability to purchase and then sell products from other suppliers due to the actions of Mack's. These statements are conclusory at best and do not prove—without considerable speculation and conjecture—that Mack's proximately caused Webb's some resultant damages.

Similar to the facts in *Baptist Health*, Webb's failed below to present sufficient evidence of damages. Webb's' allegations are essentially that Mack's interfered with its general desire to buy product from other suppliers, leaving the fact-finder to speculate as to damages. Because Webb's failed to present evidence of the required element of resultant damage, the circuit court did not err in granting summary judgment on Webb's' claim for tortious interference.

### D. Defamation

To recover for defamation, a plaintiff must prove six elements: (1) the defamatory nature of the statement of fact; (2) the statement's identification of, or reference to, the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) the damages suffered by the plaintiff. *Patrick v. Tyson Foods, Inc.*, 2016 Ark. App. 221, at 15–16, 489 S.W.3d 683, 694. A plaintiff must establish actual damage to the plaintiff's reputation, but the showing of harm is slight. *Ellis v. Price*, 337 Ark. 542, 549–50, 990 S.W.2d 543, 547 (1999). A plaintiff must prove that the

defamatory statements have been communicated to others and that the statements have detrimentally affected those relations. *Id.* The law does not require proof of actual out-of–pocket expenses. *Id.*

Here, even assuming arguendo that statements by Mack's met the other elements of defamation, which we do not specifically address in this opinion, Webb's failed to offer proof in response to Mack's' motion for summary judgment that it sustained damages. Webb's failed to offer any evidence that Mack's' alleged defamatory statements detrimentally affected its relationship with other suppliers, specifically with Hoyt. In its response to Mack's' motion for summary judgment, Webb's states that its "claim of defamation is based on a series of emails from [Mack's] to Hoyt Archery." However, Webb's admitted that Hoyt does, in fact, still do business with Webb's. Webb's nevertheless argues that it incurred damages because Hoyt required it to buy more products initially than it otherwise would have bought. However, there is no evidence that Mack's made any statements to Hoyt telling Hoyt to require Webb's to do so or any other evidence that Hoyt's purchase requirements were related to the statements made in the emails from Mack's to Hoyt. Therefore, because Webb's failed to offer sufficient proof of damages, the circuit court did not err in granting Mack's' motion for summary and dismissing Webb's' defamation claim.

E. Arkansas Deceptive Trade Practices Act

To establish a claim under the ADTPA, a private plaintiff must allege both (1) a deceptive consumer-oriented act or practice that is misleading in a material respect and (2) an injury resulting from such act. *Skalla*, *supra*. In 2017, the legislature amended the ADTPA and included an additional element that the plaintiff must suffer an "actual financial loss."

Ark. Code Ann. § 4-88-113(f)(1)(A) (Supp. 2021). "Actual financial loss" is defined in the ADTPA as "an ascertainable amount of money that is equal to the difference between the amount paid by a person for goods or services and the actual market value of the goods or services provided to a person." Ark. Code Ann. § 4-88-102(9) (Supp. 2021).

Again, assuming arguendo that Mack's' conduct as alleged by Webb's was "a deceptive consumer-oriented act or practice which is misleading in a material respect," which we specifically do not address, we hold that Webb's failed to present evidence of an "actual financial loss" as required by the ADTPA.

In its amended complaint, Webb's sets forth its allegation of damages under the ADTPA as follows: "The actions of defendant set forth above violate these specific provisions of the statute and as a result, plaintiff has suffered actual damages as contemplated by [the Act.] Additionally, such actions have damages and impacted consumers by destroying competition in the economic area involved in this case." In its response to Mack's' motion for summary judgment, Webb's stated the following regarding damages in its discussion of its claim under the ADTPA:

> Plaintiff has incurred actual damages by the actions complained about against defendant, as already argued; plaintiff has been defamed by defendant, as already argued; and all of the actions of defendant, particularly when taken as a whole to evidence defendant's obvious intention of destroying competition and interfering with plaintiff's business, constitute unconscionable, false and deceptive acts and practices.

Arkansas Code Annotated section 4-88-113(f)(1)(A) requires Webb's to prove "actual financial loss." A claimant cannot rely on conclusory allegations that the claimant has suffered actual damages and instead must allege facts that state a prima facie cause of action. *Parnell v. FanDuel, Inc.*, 2019 Ark. 412, 591 S.W.3d 315. Here, Webb's did not

12

articulate with any specificity how Mack's proximately caused Webb's to suffer an actual financial loss as required under the 2017 version of the ADTPA. Thus, the circuit court did not err in granting summary judgment and dismissing the claim under the ADTPA.

## F. AUPA Violation

Webb's also argues that summary judgment was improper because there were disputed facts concerning its AUPA claim. The AUPA provides in pertinent part that:

> [i]t shall be unlawful for any . . . corporation doing business in the State of Arkansas and engaged in the production, manufacture, distribution, or sale of any commodity or product . . . with the intent to destroy the competition of any regular established dealer in the commodity, product . . . or to prevent the competition of any person, firm, private corporation . . . who or which in good faith intends and attempts to become a dealer to discriminate between different sections, communities, or cities or portions thereof, or between different locations in the sections, communities, cities or portions thereof in this state, by selling or furnishing the commodity, product . . . at a lower rate in one section, community, or city . . . than in another.

Ark. Code Ann. § 4-75-207(a) (Repl. 2011).

Webb's argues that Mack's violated the AUPA by selling Drake Waterfowl products at one price both in its Stuttgart brick and mortar store and on its website and at a different price online through the Walmart website. Webb's also contends that the statute was violated because Drake did not want its products sold on Walmart's website.

Arkansas Code Annotated section 4-75-207(a) is penal in nature and must be strictly construed in favor of those upon whom the burden of the penalty is sought to be imposed. *See Wal-Mart Stores, Inc. v. Am. Drugs, Inc.*, 319 Ark. 214, 891 S.W.2d 30 (1995). By its very terms, the AUPA applies to price discrimination only between one area in Arkansas and another area in Arkansas. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996).

13

Webb's offered the affidavit of its owner stating that he accessed the Walmart website and found that Mack's routinely sells identical Drake Waterfowl products for a higher price on the Walmart website than it does on its own website. Webb's contends it is as if Mack's has two stores and sells products for a lower price in the one near Webb's than it sells in another store. We disagree.

The intent of the AUPA is to prevent goods that are unfairly priced below the goods of competitors from temporarily entering the market and forcing the competitor out of business, thus gaining a monopoly within a given locality after which time the prices may be raised without limit and without competition to the final detriment of the public interest. *Beam v. Monsanto Co.*, 259 Ark. 253, 266, 532 S.W.2d 175, 182 (1976). Webb's fails to establish with enough specificity that Mack's was selling identical items at different prices with a focus on the location of the purchaser and with the intent to injure competition. Rather, Webb's argues in conclusory fashion that Mack's was trying to destroy competition between the parties.

Webb's also argues that Mack's was violating the AUPA by selling Drake products on Walmart's website in contravention of a Drake policy against having its goods sold on Walmart's website. Section 4-75-208(a) is cited as the applicable statute and provides:

> (a) The secret payment or allowance of rebates, refunds, commissions, or unearned discounts is an unfair trade practice, whether in the form of money or otherwise or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions to the injury of a competitor and where the payment or allowance tends to destroy competition.

Ark. Code Ann. § 4-75-208(a) (Repl. 2011). The AUPA prohibits only the secret payment of what are commonly referred to as "kickbacks." *See Burge v. Pulaski Cnty. Special Sch.*

14

*Dist.*, 272 Ark. 67, 612 S.W.2d 108 (1981). Here, Webb's makes this allegation without sufficient evidence because there was no evidence of any secret payments or special privileges from Drake to Mack's. Nor was there any proof that such actions tended to harm competition; just more conclusory allegations. Therefore, the circuit court did not err in granting summary judgment and dismissing Webb's' AUPA claim.

## III. *Motion to Compel*

On appeal, Webb's also argues that the circuit court erred in denying its motion to compel. A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed absent an abuse of discretion that is prejudicial to the appealing party. *Williams v. Baptist Health*, 2020 Ark. 150, at 10, 598 S.W.3d 487, 495. Abuse of discretion is a high threshold that requires not only error but also that the ruling was made improvidently, thoughtlessly, or without due consideration. *Id.*

In its motion to compel, Webb's sought documents related to Mack's' sales of Drake Waterfowl products on Walmart's website. Specifically, the motion pertinently states,

> 3. During research and investigation related to depositions plaintiff took on October 15, 2018 of representatives of Drake Waterfowl, plaintiff has now determined that defendant provides Drake products for sale utilizing the online Walmart web site. Plaintiff has also determined that prior to permitting vendors to utilize its web site, Walmart requires vendors to apply for utilization rights by completing a detailed application process and agreeing to specific terms and conditions of use.

> 4. Defendant has never produced for inspection and copying any such Walmart documentation, including any documentation reflecting sales through the Walmart site or commissions or fees paid to Walmart that are required to be paid to use the Walmart website.

Webb's argued the evidence was relevant to show both an intention to interfere with Webb's' business relations and impropriety on behalf of Mack's because Drake does not

15

approve of this means of marketing. After a hearing on the matter, the circuit court found that the information sought had no relevance and was not reasonably calculated to lead to the discovery of relevant evidence.

On appeal, Webb's makes the conclusory claim that if it can prove Mack's acted improperly by selling product in violation of Drake's policy, it would show Webb's suffered damages because its sales were affected. However, Webb's fails to causally relate the relationship between Mack's and Walmart—a third-party vendor—to Webb's' claims.[5] Webb's also fails to demonstrate how additional discovery would have altered the outcome. If an appellant cannot demonstrate how additional discovery would have changed the outcome of the case, we cannot say that the circuit court abused its discretion. *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001). Therefore, Webb's' argument that summary judgment was improper because discovery was still pending is also without merit.

## V. *Conclusion*

In sum, Webb's failed to present sufficient proof on at least one of the elements of each cause of action, and the circuit court therefore did not err in granting summary judgment in favor of Mack's. Moreover, the circuit court did not err in denying Webb's' motion to compel.

Affirmed.

HIXSON, J., agrees.

HARRISON, C.J., concurs.

---

[5]Because we hold that the agreement between Walmart and Mack's is not relevant, we need not address Webb's' arguments on appeal concerning boilerplate objections, shifting responses, and duty to supplement responses.

**BRANDON J. HARRISON, Chief Judge, concurring**.  This appeal requires us to determine whether a business's conduct in the marketplace turned from lawful to unlawful.  In my view, Mack's has shown that no reasonable jury could grant Webb's relief on its amended complaint, which means that the circuit court correctly granted Mack's motion for summary judgment.  I therefore join my colleagues' decision to affirm the dismissal with prejudice of Webb's amended complaint that alleged four claims:  tortious interference with a contract and business expectancy; defamation; a violation of the Arkansas Deceptive Trade Practices Act; and a violation of the Arkansas Unfair Practices Act.  I also join the decision to affirm the circuit court's denial of Webb's motion to compel.

And while I do not necessarily disagree with the majority's damages analysis, I would affirm the dismissal of Webb's claims for the more fundamental reason that no actionable conduct has been established under the law in the first place.  That point is the focus of this writing, and it will concentrate on Webb's tortious-interference claim (Count I in the amended complaint) because that analysis drives much of the decision-making required in this case.

Summary judgment was properly granted against Webb's Count I (tortious interference with a contract or business expectancy) because Mack's conduct and statements that Mack's admittedly made are not "improper," "wrongful," or otherwise actionable.  Specifically, Webb's argues that the following conduct presents a jury question on whether Mack's tortiously interfered with a contract or business expectancy:

1. Knowing that Webb's had sold Drake Waterfowl products for several years, Mack's complained to Drake with the intent to terminate Webb's rights to sell the product and eliminate Webb's as a competitor.  Based on Mack's complaints about Webb's, Drake gave Mack's the exclusive right

17

to sell Drake products within a thirty-five-mile radius of Stuttgart, Arkansas, effectively ending Webb's ability to sell Drake products in its retail store. Webb's alleged that Mack's used this advantage to sell Drake products on Walmart's website, which was expressly forbidden by Drake's corporate policies.

2. Misleading Hoyt's Archery that "[i]f it were not for one tree-line in the way you could see Webb's from Stuttgart." Mack's also characterized itself as a "full-service" "Proshop" with very experienced technicians and Webb's as a part-pawn shop "with no technician whatsoever." When Hoyt told Mack's in 2015 that Webb's would not become a Hoyt dealer, Mack's replied, "Great. As long as they are not a dealer, I will keep buying."

3. Telling at least five other vendors, including Banded-Archery, that they had to choose between Mack's continued business or selling to Webb's. Mack's made statements such as: "You have to pick one or the other. You can't have both," and "[I]f they set up [Webb's] as a dealer Macks [*sic*] would no longer do business with that company or rep group."

Why don't these statements present a genuine issue of material fact for a jury to resolve under Arkansas law? Because this state has adopted section 768 of the Restatement (Second) of Torts, which is titled "Competition as Proper or Improper Interference." *See Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 671 S.W.2d 178 (1984) (adopting the section). And section 768, in this case, negates the potential liability that could attach under section 767. The sum and substance of section 768 is this: if the alleged tortious interference is intended—at least in part—to advance the financial interests of Mack's, then the conduct Webb's challenges will not support liability unless Mack's used "improper" or "wrongful" means to interfere with a contract or business expectancy. *See Kinco*, 283 Ark. at 78, 671 S.W.2d at 181–82. This record supports neither concept.

***Mack's actions were intended to advance its financial interests***. According to Webb's own papers filed in the circuit court, "all of the actions of the defendant, particularly when

18

taken as a whole . . . evidence defendant's obvious intention of destroying competition and interfering with plaintiff's business." But advancing one's competitive financial interest is not, in and of itself, unlawful. "[T]he freedom guaranteed each and every business, no matter how small, is the freedom to compete—to assert with vigor, imagination, devotion, and ingenuity whatever economic muscle it can muster." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972).

In the Restatement's words, "if [Mack's] conduct *is directed solely* to the satisfaction of [Mack's] spite or ill will and *not at all* to the advancement of [Mack's] competitive interests over the person harmed [that is, Webb's], [then] [Mack's] interference is held to be improper." Restatement (Second) of Torts § 768 cmt. g (emphasis added). At oral argument, Webb's counsel was asked for proof in the record that Mack's conduct was directed solely to the satisfaction of Mack's ill will or spite against Webb's rather than being even partly based on Mack's financial interests in the marketplace. None was provided. The record therefore supports the conclusion that Mack's conduct—at least in part—was directed to advance its competitive interest. No evidence in the record supports the proposition that Mack's conduct was directed solely to satisfy spite or ill will, so we then ask whether the means or methods Mack's used to compete with Webb's were "wrongful" or "improper," as those terms of art have been applied before.

***Mack's actions were not wrongful***. Conduct the Restatement deems illustrative of "wrongful" conduct is as follows: a violation of the law, physical violence, coercion, fraud, misrepresentation, breach of fiduciary duty, defamation, antitrust violations, wrongful use of confidential information, and meritless civil or criminal litigation. *See* Restatement

19

(Second) of Torts § 468 cmt. e (1977) (and case law citing comment). No circuit court filing has provided proof of such conduct by Mack's. And when given the opportunity to state instances of "violations of the law, physical violence, coercion, fraud, misrepresentation, breach of fiduciary duty, defamation, antitrust violations, wrongful use of confidential information, and meritless civil or criminal litigation" by Mack's, Webb's provided nothing save the allegation of defamation. But on that score, the communications that Mack's made to third parties about Webb's operations were opinion and bluster at best, not defamation. Simply put, Mack's statements do not meet the expectations of what the Restatement provides as being illustrative of "wrongful conduct." Summary judgment against Count I was therefore justified.

*Mack's actions were not improper*. Granted, there is no hard and fast definition of "improper conduct" under Arkansas law for the purpose of analyzing a claim for tortious interference. *See* AMI Civ. 404 (Nov. 2020 update). But that does not mean that a jury question is presented on whether Mack's had an "improper" intent, purpose, plan, or motive. In fact, Webb's has consistently maintained that Mack's conduct was aimed to improve Mack's market share. The circuit court record and the oral argument make this clear.

The record does show that Mack's used persuasion and exerted limited economic pressure; but this was done in line with the limits section 768 sets. Mack's is permitted to divert business away from Webb's and to itself so long as the interference is not done solely to satisfy spite or ill will and is done at least in part to advance Mack's competitive interests and does not otherwise violate the law. *See* Restatement (Second) of Torts § 768 cmts. e,

20

g. And Mack's can, in the manner shown in this case at least, refuse to deal with a third party if the third party chooses to do business with Webb's. This is true whether the third party be Hoyt's Archery or some other vendor that sells to Webb's. Negotiating an exclusive right to sell certain Drake products, for example, was not improper. Mack's conduct is odious to Webb's business sense, but the conduct was lawful under Arkansas law because it was limited to the arena of legitimate business competition. The bottom legal line is that no unlawful restraint on trade was established on this record.

★ ★ ★

Now, the remainder of Webb's points on appeal. The common-law claim of a tortious interference with a contract or business expectancy and the statutory ADTPA claim that the majority mentions are coextensive in all material respects given this record. Consequently, the same result should issue on both claims, and the circuit court did not err when it dismissed the ADTPA claim. Likewise, the closely related defamation claim fails on this record.

I also agree with my colleagues that the discovery responses sought by Webb's were not relevant to its AUPA claim nor were they reasonably calculated to lead to the discovery of admissible evidence—or so the circuit court could have determined while using its broad discretion. Ark. R. Civ. P. 26(b)(1) (2021).

Finally, the Arkansas Supreme Court has not applied the 1937 AUPA statute to internet transactions, and Webb's has failed to persuade this court that Mack's has discriminated in its pricing between one geographic area in Arkansas as compared to another.

For the reasons given, the circuit court did not commit any reversible error when it dismissed Webb's amended complaint with prejudice and denied the motion to compel.

*David M. Hargis* and *Robert S. Tschiemer*, for appellant.

*Rose Law Firm*, by: *Richard Donovan* and *Betsy Baker*, for appellee.